IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| T.J.G., | : |
| **Plaintiff,** | : |
| v. | : Case No. 5:24-cv-00398-CHW |
| COMMISSIONER OF SOCIAL SECURITY, | : Social Security Appeal |
| **Defendant.** | : |

## ORDER

This is a review of a final decision of the Commissioner of Social Security denying Plaintiff T.J.G.'s application for disability benefits. The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, and as a result, any appeal from this judgment may be taken directly to the Eleventh Circuit Court of Appeals in the same manner as an appeal from any other judgment of the United States District Court. Because the ALJ did not sufficiently articulate which portions of an inconsistent medical source opinion he found persuasive, the resulting RFC is not supported by substantial evidence. Plaintiff's case is **REMANDED**.

## BACKGROUND

Plaintiff applied for Title II disability benefits on March 9, 2021, alleging disability beginning on December 8, 2020, based on a total colectomy and severe pains in both feet with standing for long periods. (Ex. 1A). His date last insured (DLI) was December 31, 2024. (R. 30, 107). After Plaintiff's applications were denied initially and on reconsideration at the state agency level of review (Exs. 1A-4A), Plaintiff requested further review before an administrative law judge

1

(ALJ). The reviewing ALJ held hearings on July 13, 2023 and February 27, 2024. (R. 43-67, 68-96). The ALJ issued an unfavorable opinion on June 7, 2024. (R. 25-42). Plaintiff's request for review of that decision by the Appeals Council was denied on September 11, 2024. (R. 12-17). The case is now ripe for judicial review. *See* 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

Judicial review of a decision of the Commissioner of Social Security is limited to a determination of whether that decision is supported by substantial evidence, as well as whether the Commissioner applied the correct legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence" is defined as "more than a scintilla," and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Eleventh Circuit has explained that reviewing courts may not decide the facts anew, reweigh the evidence, or substitute their judgment for that of the Commissioner. *Id.* Rather, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the evidence preponderates against it.

## EVALUATION OF DISABILITY

Social Security claimants are "disabled" if they are unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled: "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments

in the Listing of impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v)).

## MEDICAL AND ADMINISTRATIVE RECORD

Plaintiff's challenge focuses on the ALJ's treatment of the consultative psychological examiner's opinions when developing Plaintiff's RFC. Therefore, while the entire record has been reviewed, this summary focuses on the portions of the record most germane to Plaintiff's challenge.

As part of Plaintiff's disability application, Dr. Michael Rose conducted a consultative psychological exam in August 2023. (Ex. 11F). Dr. Rose recounted the reasons for Plaintiff's disability application and found Plaintiff to be a good historian of his conditions. (R. 676). Aside from Plaintiff's various medical conditions, Plaintiff suggested that "social issues" would interfere with his ability to work with others. (*Id.*) Plaintiff admitted to having had no formal mental health treatment or services, even as part of his VA disability rating. (R. 677). Plaintiff disclosed suicidal ideations and overmedicating, such as taking ten sleeping pills without incident. (*Id.*) Plaintiff reported constant worrying and lack of sleep due to nightmares and body pain. (*Id.*) Plaintiff also had experienced panic attacks since 2018. (*Id.*) While Dr. Rose saw no indication of bias during testing, he believed that Plaintiff exaggerated some of the mental health issues. (R. 679).

Plaintiff's social interactions, other than with family, were limited to social media. (R. 677). Plaintiff's mother shopped for groceries and other items that Plaintiff may need. (*Id.*) While his pain and need for breaks limited his ability to do chores, Plaintiff reported being able to help

sweep, mop, vacuum, fix simple meals, and take out the trash. (*Id*.) Plaintiff had, at times, needed help with personal hygiene tasks. (*Id*.) Dr. Rose observed Plaintiff to be well-groomed. (R. 678).

Plaintiff displayed a constricted, blunted affect and depressed mood during the examination. (R. 678). Plaintiff was attentive during the examination with good eye contact and responded to questions, but he needed reminders for a 3-step command. (*Id*.) Plaintiff displayed no unusual reactions to failure or success during the examination. (*Id*.) Dr. Rose described Plaintiff's mental energy and pace as slow, but Plaintiff was able to complete the exam within normal time limits and to read and complete his intake form. (*Id*.) Dr. Rose rated Plaintiff's exam performance as borderline. (*Id*.) Dr. Rose assessed Plaintiff with somatic symptom disorder, insomnia, persistent depressive disorder, generalized anxiety disorder, and panic disorder. (R. 679).

In his narrative summary, Dr. Rose explained that Plaintiff had the ability to understand and carry out simple 1 or 2-step instructions, would have a moderate impairment in maintaining focus, and would be capable of performing a repetitive unskilled job for a brief period of time. (R. 679). He would likely have a moderate level of impairment for tolerating normal stress within a work environment. (*Id*.). Accompanying Dr. Rose's narrative report was a medical source statement which featured a series of check-box and narrative prompts. (R. 680-682). This form largely tracked Dr. Rose's written narrative, however Dr. Rose checked that there would be no limitations on Plaintiff's ability to understand and remember simple instructions, carry out simple instructions, and make judgments on simple work-related decisions. (R. 680). Dr. Rose then made the following handwritten note: "[Plaintiff's] stated pain complaints and ongoing emotional distress would hinder to a moderate degree his ability to maintain focus and attention across an

4

eight-hour shift. There would not be any impairment for his ability the [sic] understand and carry out simple repetitive job responsibilities." (*Id*.)

*Hearing Testimony*

The ALJ held two in-person hearings in Plaintiff's case. (R. 43-67, 68-96). At the first hearing, Plaintiff recounted his education and work history, including his service in the Air Force as an aerospace maintenance technician. (R. 75-76). He last worked in 2020 as a stocker but was fired for calling out for treatment. (R. 75). Plaintiff testified about how depression and fatigue limit his ability to work and go about his day, but he acknowledged his lack of psychological treatment. (R. 74, 80-81, 86-87). The hearing closed with the ALJ acknowledging that additional records would be forthcoming before a decision would be made. (R. 95).

Plaintiff was sent to Dr. Rose following the first hearing, after which his counsel requested a second hearing. (R. 45, 48). At the time of the second hearing, Plaintiff still had not sought psychological treatment despite routine visits to the VA for other treatment. (R. 50). Plaintiff did not think mental health treatment would help him and might actually make his condition worse. (R. 50-52). The ALJ encouraged Plaintiff to seek treatment. (R. 52, 67). Plaintiff continued to struggle with sleep and focus and to limit his social interactions to online friends. (R. 53-55).

*Function Report*

Plaintiff completed a function report with the assistance of his mother. (Ex. 4E). The report largely mirrored his hearing testimony in that he struggled with sleep, interacted with others through the phone or computer, and limited going places on a regular basis. (*Id*.) Plaintiff limited his ability to complete tasks because he was unable to stand or walk for a long time. (R. 281). He explained that he could follow spoken and written instructions and get along with people. (*Id*.)

5

Plaintiff placed no limitations on his own work ability due to any mental health conditions. *See generally* (Ex. 4E).

Plaintiff's mother did not complete a third-party function report, but she wrote a letter in support of Plaintiff's application in which she described his decline in physical and mental health. (Ex. 12E). She described her efforts to encourage Plaintiff to seek mental health treatment after observing the toll that his medical condition had taken on him. (*Id.*)

*Post-Hearing Treatment*

Following the second hearing before the ALJ, Plaintiff had a mental health assessment at the VA. (R. 735-742). Plaintiff admitted that he presented for the assessment at the encouragement of his mother and the ALJ. (R. 736). He appeared guarded and defensive with a mildly depressed mood and flat affect. (R. 740). However, he displayed organized and coherent through processes with good insight and judgment. (R. 741). Plaintiff reported nightmares, flashbacks, and intrusive memories and suggested his traumas impacted his social and occupational functioning. (R. 738-739). Mirroring his hearing testimony, Plaintiff limited his social interactions to his mother, some close friends, and online contacts, and he noted that he struggled with sleep (R. 739, 740). Plaintiff reported hallucinations in the form of hearing footsteps when he is alone and ringing in his ear. (R. 741). Plaintiff was assessed with major depressive disorder. (R. 741). While he appeared receptive to receiving mental health services, Plaintiff told the evaluator that he would need time to think about participating in treatment. (R. 741).

## DISABILITY EVALUATION

Following the five-step sequential evaluation process, the reviewing ALJ made the following findings in this case. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 8, 2020, the alleged onset date. (R. 30). Plaintiff's date

last insured was December 31, 2024. (*Id.*) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: obesity, history of Lynch syndrome, pes planus of the bilateral feet, hidradenitis, suppurativa, somatic symptom disorder, major depressive disorder, generalized anxiety disorder, and panic disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments. (R. 31-32). Plaintiff was found to have moderate limitations in each of the "paragraph B" factors, except understanding, remembering or applying information for which he had a mild limitation. (R. 31). Therefore, the ALJ assessed Plaintiff's RFC and determined that Plaintiff could perform light work with the following considerations:

> [Plaintiff] can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. He should never climb ladders, ropes or scaffolds. He should avoid concentrated exposure to heat, to humidity, and to caustic chemicals. He can understand, remember and carry out simple tasks and instructions in a routine work environment. He can occasionally interact with the public and co-workers and frequently interact with supervisors. Changes to the worksite and procedures should be no more than occasional.

(R. 32).

Based on this RFC, the ALJ found at step four that Plaintiff is not capable of performing any past relevant work. (R. 36). Pursuant to step five, the ALJ determined that there are jobs existing which Plaintiff can perform, such as marker, garment sorter, assembler II, printed circuit board screener, final inspector, and food and beverage order clerk. (R. 37). As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from December 8, 2020, through the date of the decision. (*Id.*).

# ANALYSIS

Plaintiff argues that the ALJ's decision contains legal errors and is not supported by substantial evidence because the ALJ failed to explain the discrepancies between Dr. Rose's persuasive opinion and the resulting RFC. (Doc. 14). He argues that the failure to address the discrepancy violates agency regulations and, thus, that the resulting RFC is not supported by substantial evidence. (*Id.*) The Court need not fully address Plaintiff's arguments because, as a threshold matter, the ALJ failed to address the internal inconsistencies in Dr. Rose's opinion. As a result, the Court is unable to decipher why he incorporated only certain portions of the opinion, and the resulting RFC cannot be found to be supported by substantial evidence.

For applications filed on or after March 27, 2017, there is no requirement to give treating physicians deference. *See* 20 C.F.R. § 404.1520c. The weight given to all medical opinion evidence – even those opinions from Plaintiff's own treating physicians – is now governed by 20 C.F.R. § 404.1520c. Under these regulations, the agency no longer defers or gives any specific evidentiary weight to any medical opinion, even those from a claimant's own medical sources. 20 C.F.R. § 404.1520c(a). The decision instead must articulate how persuasive the medical opinions and prior administrative findings were found to be. 20 C.F.R. § 404.1520c(b). The ALJ recognized and complied with the updated regulations and found Dr. Rose's opinion persuasive:

> Michael Rose, Ph.D., examined the claimant on August 8, 2023. During the evaluation, the claimant was alert and oriented. He had slow gross motor speed. He had normal speech. He had depressed mood and constricted affect. He had appropriate eye contact. The claimant could recall two of four words. Dr. Rose opined that the claimant has mild limitations in understanding and moderate limitation in the three other domains. (See Exhibit 11F). The opinion of Dr. Rose is persuasive, as it aligns with the results of the claimant's evaluation, and it is

supported by his testimony of his mental health symptoms, despite his lack of treatment.

(R. 35).

The ALJ incorporated the following mental health limitations into the RFC: "[Plaintiff] can understand, remember and carry out simple tasks and instructions in a routine work environment. He can occasionally interact with the public and co-workers and frequently interact with supervisors. Changes to the worksite and procedure should be no more than occasional." (R. 32).

Plaintiff argues that because the ALJ found Dr. Rose's opinion persuasive, he was required to adopt the opinion's suggested limitations or adequately explain the reasons for excluding them, but because the ALJ did neither, he committed reversible error. (Doc. 14) (relying primarily on Social Security Ruling (SSR) 96-8p (1996 WL 374184) and *Weidlich v. Comm'r, Soc. Sec.* 2023 WL 8015753 (11th Cir. 2023)). Plaintiff specifically highlights the ALJ's failure to limit Plaintiff to "1 or 2-step instructions" or recognize that Plaintiff could only perform a repetitive unskilled job for a brief period of time. (Doc. 14, p. 8, 13-19); (R. 679 under the "Impressions/Summary" heading). The Commissioner counters that Plaintiff ignores both that an RFC is the most a plaintiff can do and that the RFC appropriately accounts for the limitations in Dr. Rose's medical source statement. (Doc. 17); *see also* (R. 680-682 "Medical Source Statement"). The parties accurately cite Dr. Rose's examination in their briefs, which demonstrates that Dr. Rose's medical statement form and narrative summary conflicts are, on their face, inconsistent. This inconsistency makes it difficult to determine what Dr. Rose's opinion is regarding Plaintiff's limitations, much less which portions of the opinion the ALJ found persuasive such that substantial evidence would support the decision.

The distinction between "understanding and carrying out simple 1 or 2-step instructions" and "understanding, remembering, and carrying out simple tasks and instructions in a routine work

9

environment" can matter in terms of the representative jobs a claimant like Plaintiff can do. In most scenarios, no conflict exists between an RFC that limits a claimant's ability to "understand, carry-out, and remember simple instructions" and jobs requiring a reasoning level of two, which applies to most of the jobs listed in the ALJ's decision. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021); (R. 37). This is because "'simple' does not plainly contradict 'detailed'" as required by jobs with a reasoning level of two. *Id*. (summarizing that level one reasoning requires a worker to "apply commonsense understanding to carry out simple one- or two-step instructions" while level two reasoning requires "commonsense understanding to carry out detailed but uninvolved written or oral instructions"). Instead, the "primary difference" between levels one and two is the *length* of the instructions—not the complexity." *Id*. (emphasis in the original) (also noting that level two reasoning is not limited in length). The *Buckwalter* court ultimately affirmed the claimant's RFC, but unlike in *Buckwalter*, Dr. Rose's records suggest that Plaintiff is capable of carrying out simple 1- or 2-step instructions. Such a limitation, if supported, would go to the length of the instructions instead of the complexity, and thus implicate jobs requiring level one reasoning. The ALJ needed either to explain why this limitation was not supported by the record or to have incorporated this limitation into a hypothetical when questioning the vocational expert at the hearing. He did neither. Therefore, the Court is not able to determine from the decision or from the record as whole whether substantial evidence supports the ALJ's RFC assessment.

    Because Dr. Rose's opinion is internally inconsistent about the types of tasks to which Plaintiff was limited, the decision should have specified which portions of Dr. Rose's opinion the ALJ found persuasive – the narrative description of Plaintiff's abilities or the limitations described in the medical source statement – and why. The resulting RFC closely tracks the limitations noted

in Dr. Rose's medical source statement, which suggests the ALJ found that portion persuasive. However, that connection and conclusion would be based upon the Court's conjecture. The decision and record provide no guidance to determine whether the ALJ acknowledged, much less rejected, the limitations in Dr. Rose's narrative in favor of the less restrictive limitations found in the medical source statement. Even under the substantial evidence standard, "when the ALJ fails 'to state with at least some measure of clarity the grounds for his decision,' [the Court] will decline to affirm 'simply because some rational might have supported the ALJ's conclusion.'" *Winschel*, 631 F.2d at 1179 (citations omitted). The ALJ failed to sufficiently specify which limitations from Dr. Rose's inconsistent records he found persuasive, and thus the resulting RFC is not supported by substantial evidence.

## CONCLUSION

Based on the foregoing, it is **ORDERED** that the Commissioner's decision be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g).

**SO ORDERED**, this 24th day of November, 2025.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
